Mooney *v.* Yeagle et al., Appellants.

Argued October 6, 1932. Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Frank R. Ambler,* and with him *Harry S. Ambler, Jr.,* for appellants.

*William J. McMenamin,* and with him *Sabato M.*

*Bendiner, Irvin Bendiner* and *Milford Bendiner,* for appellees.

OPINION BY KELLER, J., January 25, 1933:

William J. Mooney was found dead, sitting in a trench, eighteen inches deep, outside, but very near to, a house in Wyncote. His business there was to fit a four inch iron soil pipe, which extended through the cellar wall, into a terra cotta sewer pipe laid in the trench, and cement the joint. He had come, a short while before, from the cellar of the house, where he had fitted the soil pipe in the house into the other end of this iron pipe and caulked the joint with melted lead. He had come with his employer, Yeagle, to the house about forty-five minutes before his death. Yeagle brought with him the section of iron pipe needed to make the connection—a small piece two and a half feet long—but Mooney had to break off a bit of it before it would fit. To do this he used a three-pound hammer. The iron was about a quarter of an inch thick. The pipe went through the wall at a point about three feet above the cellar floor. The uncontradicted testimony is that the work was light, requiring neither heavy lifting nor great or unusual exertion. It was in the ordinary line of his employment. The whole operation took about forty minutes, but the knocking off a small piece of the pipe, so that it would be the right length for use, was the first thing to be done, and could not have consumed much time.

His widow and child made claim for compensation on the ground that his death resulted from an accident in the course of his employment.

The referee (Snyder) refused to award compensation, on the ground that death was not the result of an accident but was the natural result of heart disease, from which it was shown that Mooney had been suffering for over a year, with progressive degeneration. On appeal, the board sent back the case for further

hearing and additional testimony, it appearing that the doctor (Shepherd) who had testified to the causal connection between the breaking of the iron pipe and the employee's death had based his opinion in part on facts not in evidence.

The second referee, (Ditter), after hearing the additional evidence, likewise refused to award compensation, on the ground that the death was not due to any accident; that claimants had "failed to establish that the death of the decedent employee was caused by over-exertion or strain or such cause as could be classified as an accident within the meaning of the Workmen's Compensation Act." On appeal the board reversed the referee and awarded compensation. On appeal to the court of common pleas the order of the board was affirmed and judgment entered in favor of the claimants. This appeal followed.

It is undisputed that Mooney was, and for more than a year had been, suffering from chronic myocarditis, a disease of the heart. Doctor Shepherd, on whose testimony the board based its action, never saw the decedent, but used the evidence of his condition, as testified to by his widow, and the records of the United States Naval Hospital at League Island, made over a year before Mooney's death, as the basis of his testimony. These records showed that Mooney also suffered from chronic bronchitis. From these records and Mrs. Mooney's testimony Dr. Shepherd gave his opinion of the cause of death as, "acute dilatation of the heart following a chronic diffused myocarditis, superinduced by overdue strain of work—I don't know how to say 'work,'—but to all energy I'm thinking of." In reply to the question of claimants' counsel, "Have you formed any opinion as to any specific cause that could have led up to this acute dilatation?" he replied, "Yes, the work, superinduced by the use of the three pound hammer on the four-inch soil pipe, working eight hours a day, all those things would have—would be excessive

work for a man in any potential heart lesion." Else-
where in his testimony he stated that in Mooney's con-
dition, as disclosed in the hospital records, he should
not have worked at all at that type of work,—though
he had been in business for some years previous as
a plumber on his own account. He also testified that
Mooney was apt to die—'go off' was the expression
used in the question—from heart disease at any time,
whether he was working or not. He took for granted,
even on his second examination, that breaking a small
piece of pipe from a two and a half foot length of
four-inch pipe was heavy work requiring great exer-
tion, notwithstanding the only evidence in the case
was that it was not; and throughout his testimony he
coupled up the exertion from breaking the pipe, with
his working eight hours, and referred to both as
forming the 'excessive work' responsible for the dila-
tation of the heart. When it is considered that the
use of the hammer by Mooney in breaking the pipe
probably occurred at least half an hour before his
death, and that following it he fitted the pipe with the
soil pipe in the house, caulked the joint with melted
lead, finished the work on the inside, and then walked
up a flight of stairs and went outside and stepped
down into the trench, prepared to finish the work on
the outside, without any complaint or evidence of dis-
tress, it is the veriest guesswork to link up the death
of a man, who had such a bad heart that he ought not
to work at all at plumbing, and who was liable to die
at any time, whether he was working or not, with the
few blows that he gave the pipe with the hammer half
an hour previously, rather than the other things he
did in the ordinary performance of his work. If Doc-
tor Shepherd is to be believed, Mooney's heart was in
such a condition that he might die at any time with
but slight exertion or no exertion at all. To bring
his death within the Workmen's Compensation Law
and make his employer liable for compensation, it was

necessary to prove that it was due to an accident, some untoward occurrence aside from the usual course of events: Gausman v. Pearson Co., 284 Pa. 348, 354, 131 Atl. 247. The fact that an employee suddenly dies while doing work which calls for no unusual physical strain raises no presumption of an accident: Lesko v. Lehigh Valley Coal Co., 270 Pa. 15, 112 Atl. 768. All of the cases relied upon by the board and the court below may be distinguished in that respect from this one. In Watkins v. Pittsburgh Coal Co., 278 Pa. 463, 123 Atl. 461, the employee had climbed up a stairway eighty feet high and had sustained a fall, and his body was found lying near a flight of steps with a cut on the forehead and a bruise on the cheek. In Samoskie v. P. & R. C. & I. Co., 280 Pa. 203, 124 Atl. 471, he had received a strain while pushing a heavy loaded coal car. In Skroki v. Crucible Steel Co., 292 Pa. 550, 141 Atl. 480, the employee's death followed his over-exertion in carrying steel bars weighing two hundred pounds each in a hot room and holding them in place until cut in two. In Calderwood v. Consolidated Lumber & Supply Co., 91 Pa. Superior Ct. 189, death followed the turning of a windlass crank lifting a heavy timber. In Zborovian v. Suffolk Anth. Collieries Co., 93 Pa. Superior Ct. 320, the employee was unloading mine props twenty-five feet long and ten to twelve inches in diameter at one end and six inches at the other, weighing four hundred to five hundred pounds. In Yodis v. P. & R. C. & I. Co., 269 Pa. 586, 113 Atl. 73, he was hit on the head by a dump wagon. In Bakunas v. P. & R. C. & I. Co., 78 Pa. Superior Ct. 175, he was struck a hard blow on his left eye by a piece of coal or rock, accelerating the development of a cataract and making an operation necessary.

There was in the present case, on the other hand, using the language of the Supreme Court in Lesko v. Lehigh Valley Coal Co., supra, "No unusual happening in the course of his work, nor marks nor evidence of

external violence to his person, nor was there shown any sudden unlooked for occurrence in the course of his work calling for any extra exertion or strain other than that required by his usual and ordinary labor for the day."

We think the case is ruled by Gausman v. Pearson Co., supra, where the Supreme Court reversed the referee and board who had allowed compensation for a death resulting from heat exhaustion or apoplexy, which a doctor had attributed to exertion in the performance of work, just as in this case Dr. Shepherd did. The court said (p. 354) the following, which is very appropriate to this case: "To constitute an accident there must be some untoward occurrence aside from the usual course of events. Such stroke will be treated as an accident when resulting from a shock, strain or other injury to the physical structure of the body (Samoskie v. Phila. & Reading C. & I. Co., 280 Pa. 203; Watkins v. Pittsburgh Coal Co., 278 Pa. 463; Yodis v. Phila. & Reading C. & I. Co., 269 Pa. 586), but here nothing of that kind occurred. The work was light with no unusual occurrence. Disability, overtaking an employee at his work, is not compensable unless the result of accident. And the burden is on claimant to prove it was such and not from natural causes: Skinner's Pennsylvania Workmen's Compensation Law 54, and cases there cited. True, Dr. Frederick attributed the exhaustion, or stroke, to claimant's exertion in the performance of his work and expressed the opinion that but for the work it would not have happened at that time; in other words that the disability was hastened by the work; even so, that alone would not constitute an accident; otherwise it would be unsafe to give employment to anyone advanced in years. Disability, hastened by such exercise, cannot be treated as accidental; neither can death or disability overtaking an employee in the course of his employ-

ment and resulting from a natural cause; if it could, it would render the employer an insurer of the life and health of the employee." See also Diriscavage v. Penna. Coal Co., 96 Pa. Superior Ct. 189.

A careful review of the record in this case has failed to disclose any sufficient competent evidence on which to base the finding that Mooney's death was due to an accident—using that term as construed by the decisions of the Supreme Court—in the course of his employment, rather than from the natural development of the disease of the heart from which he was suffering, which may have been hastened by his usual and ordinary work as a plumber, but for which, since it caused no great or unusual physical strain, the law does not make his employer liable by way of compensation.

The assignments of error are sustained. The judgment is reversed and the order of the referee disallowing compensation is affirmed.