## Foster v. Borough of State College et al.

Argued July 12, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Frank R. Ambler*, and with him *Ellis L. Orvis*, for appellant.

*James C. Furst*, for appellee.

OPINION BY BALDRIGE, J., October 18, 1933:

This is a workmen's compensation case. The referee made an award in favor of the claimant, which was sustained by the board and the lower court. This appeal followed.

The essential and undisputed facts established are as follows: The decedent, Philip D. Foster, 67 years old at the time of his death, was employed by the State Workmen's Insurance Fund, and was also fire marshal of the volunteer fire department of the Borough of State College. On March 21, 1930, about one o'clock P. M., an alarm of fire was sounded. Decedent had just finished his dinner and ran to the fire which was approximately a square from his home. Arriving at the scene of the conflagration, he assisted in making a hose connection on one side of the pumper, then hastened around to the other side of that apparatus, and was directing the handling of the hose when he fell to the ground. Dr. Dale was immediately summoned and found the decedent dead as a result of an "acute heart condition."

Dr. J. V. Foster, the deceased's family physician, testified that on January 4, 1927, he was called to treat him and found him in paroxysms of pain from angina

pectoris, "a progressive disease," brought on by shoveling snow; that he advised him to keep in bed for several days, and gave him digipoten, a derivative of digitalis, for several months following this attack; that he informed the deceased of his diagnosis and advised him to reduce his physical activities to a minimum and to resign from the fire company; that his duties in connection therewith, or if he otherwise violently exerted himself, were likely to cause another seizure. But it appears from the evidence that Foster disregarded the advice of his physician and continued to attend fires and discharge his duties as a fire marshal. It was admitted that at intervals he continued to experience heart attacks. In the following November, Dr. Foster was again consulted, when he advised deceased not to go on a contemplated hunting trip. Dr. Foster expressed the opinion that the excitement and effort exerted at the time of the fire aggravated and accelerated the heart condition of the deceased to such an extent as to cause his death.

Frequently, it is difficult to determine whether death is due to an accident or to natural causes. The division line in many instances is very indistinct. The courts in England and this country, in their efforts to solve this problem, have endeavored to give a comprehensive definition of "accident," as used in compensation laws. See Boardman v. Scott & Whitworth (1902), 1 K. B. 43, 46; Fenton v. Thorley & Co. (1903), 19 T. L. R. 684, 685; Clover, Clayton & Co. v. Hughes, 3 B. W. C. C. 275; Coe v. The Fife Coal Co., Ltd., 2 B. W. C. C. 8; Lacey v. Washburn & Williams Co., 309 Pa. 574, 164 A. 724. Our courts have adopted "a mishap," or "fortuitous happening,"—an "untoward event, which is not expected or designed" (McCauley v. Imperial Woolen Co. et al., 261 Pa. 312, 328, 104 A. 617); "unforeseen violence to the physical structure of the body" (Lane v. Horn & Hardart B. Co., 261 Pa.

329, 333, 104 A. 615); or an occurrence "unexpected and unforeseen" (Lacey v. Washburn & Williams Co., supra, p. 578), as an accident within the meaning of the compensation law.

It is well known that, in communities where there is no paid fire department, volunteer firemen frequently run to a fire. The running to the fire, we concede, was preliminary to Foster's regular work at the scene of the fire, but, undoubtedly, one of his duties was to get there quickly. When he left his home, therefore, he was then, admittedly, in the course of his employment, discharging a duty which necessarily required exertion. But, may we assume that the deceased, in his efforts to get to the burning building promptly, or in engaging in his activities there, was doing something unusual, or that he was exerting himself to a greater degree than customarily? The evidence failed to show whether or not Foster did anything other than perform his ordinary duties in the usual way. The death seems to have been the natural result of the exertion, in view of the physician's warning to him not to over-exert and of the fatal result that might follow. No doubt his exertion did hasten his death, but that of itself is insufficient. A claimant must prove, as we can not take it for granted, that there has been an accident. Death occurring while discharging usual duties in a normal way without exceptional effort is insufficient to establish a "mishap" or "fortuitous happening": Gausman v. Pearson Co., 284 Pa. 348, 354, 131 A. 247; Mooney v. Yeagle, 107 Pa. Superior Ct. 409, 164 A. 82. If there was no abnormal effort or strain by the deceased, but merely the natural exertion incident to discharging his usual duties as fire marshal, the collapse of a weakened heart was not compensable: O'Neill v. Lehigh Coal & Navigation Co., 108 Pa. Superior Ct. 425, 165 A. 60; Mooney v. Yeagle, supra;

Pelusi v. Mandes et al., 109 Pa. Superior Ct. 439, 167 A. 456.

The cases relied upon by the board and the court below, we think, are distinguished from the case at bar. In Tracey v. P. & R. C. & I. Co., 270 Pa. 65, 112 A. 740; Skroki v. Crucible Steel Co., 292 Pa. 550, 141 A. 480; Calderwood v. Consolidated Lumber & Supply Co., 91 Pa. Superior Ct. 189; and Honis v. Coxe Bros. & Co., Inc., 95 Pa. Superior Ct. 209, death was due to unusual exertion. In Watkins v. Pittsburgh Coal Co., 278 Pa. 463, 466, 123 A. 461, the principal case relied upon by appellant, it was alleged that death was due to an acute dilatation of the heart resulting from climbing 80 feet of stairs. The body of the deceased was found at the top of the steps with a cut on his forehead and a bruise or scratch on his cheek. The court, in holding that it was an accident, significantly stated: "It clearly appears the deceased sustained a fall, and this may have caused death by brain lesion or some other injury; so, in addition to the question of heart strain, the circumstances tend to support the finding of an accidental death." There is no evidence in the instant case to support the conclusion that death was due to an injury or to any cause other than collapsing of an impaired heart, subject to a certain, but not unusual, strain.

It may be that the claimant can show that her husband's death was due to unusual exertion while in the course of his employment as fire marshal. If so, this case may come within the authorities relied upon by her. Knowledge of more of the facts will facilitate a just conclusion.

The record is therefore remitted to the court below with instructions to remit it to the board for more specific findings of fact.

Judges Keller and James dissent, and would affirm the judgment.