Viehdorfer, Appellant, *v.* Cherry Run Coal Mining Company et al.

Argued October 26, 1936.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*John T. Taylor,* with him *Arthur C. Dale,* for appellant.

*E. J. Thompson,* of *Thompson & Litke,* for appellee.

OPINION BY CUNNINGHAM, J., January 29, 1937:

This is one of those border line workmen's compensation cases in which the husband of claimant, sixty-two years of age and afflicted with arteriosclerosis, suffered a fatal cerebral hemorrhage while engaged in his accustomed employment of loading coal in one of his employer's mines. No new questions of law are involved—the controlling question being whether there was competent evidence to support the conclusion of the compensation authorities, reversed by the court below, that the employee's death resulted from an "accident", within the meaning of our Workmen's Compensation Act of June 2, 1915, P. L. 736, or whether, as contended by the defendants, it was attributable to the

normal, ordinary and usual progress of his pre-existing chronic disease.

At the first hearing before a referee, at which the claimant was not represented by counsel, the substance of the evidence was that between eleven and twelve o'clock on the forenoon of August 31, 1934, the decedent and his brother-in-law, Frank Hipple, were attempting to push a mine car, partially loaded with coal, away from the "face" and up a slight "hump" in order to continue loading it when decedent's feet slipped and "he went down ...... kind of on his side." Hipple testified he and decedent were behind the car and decedent was pushing "as much as he could." Upon being removed from the mine to his home he was attended by Dr. E. H. Harris, who was not present at the hearing. From his home he was taken to a hospital at Philipsburg, arriving in the early afternoon. Dr. L. Luxemberg, who first saw decedent at the hospital, testified the patient was then unconscious, had spastic paralysis of the left side of his body, and had a blood pressure of 250/145. An examination of his urine showed the presence of albumen and casts; his death occurred at 5:30 the following morning from a cerebral hemorrhage. This witness stated decedent had arteriosclerosis and that the kidney condition disclosed by the examination and the high blood pressure noted accompany that disease. The substance of the medical testimony at this hearing was that decedent's physical condition was such that he might have suffered a cerebral hemorrhage at any time. The evidence adduced would not sustain a satisfactory inference one way or the other upon the question whether the hemorrhage was attributable to the exertion put forth in starting the car or incident to the slipping of the employe's feet, or whether the fall itself was caused by a hemorrhage which occurred in the normal progress of the arteriosclerosis.

Under the evidence at this hearing, the referee found the death was "not shown to have been the result of such violence to the physical structure of the body as is contemplated [by the act], nor was it shown to have been the result of an accident while in the course of employment." The referee accordingly, and we think properly in the light of the medical evidence then upon the record, disallowed the claim.

On July 8, 1935, the board granted a rehearing and the case came on before another referee; the claimant was represented by counsel at the rehearing and Dr. Harris was called. Upon consideration of the additional lay and medical testimony then adduced, the referee made, inter alia, the following findings of fact:

"That on August 31, 1934, at about 11:30 A. M., the decedent and his buddy had a car of coal about two-thirds loaded and had pushed the car from the face of the working a sufficient distance to complete the loading of said car and top it off with lump coal; that there was a hump, or a ridge, in the floor of the mine two or three inches high, made by the cutting machine, which made it necessary to push the partially loaded car of coal over the hump; that the decedent and his buddy started to push the car away from the working face over this hump, and the decedent in exerting unusual force in pushing the car placed his foot against a lump of coal, and as he pushed the car the lump of coal broke under his foot which caused the decedent to be thrown to the ground; ......

"That, ...... decedent ...... was suffering from arteriosclerosis; that the unusual exertion which the decedent put forth in pushing the car placed an undue strain on his already diseased and hardened blood vessels, which brought about the cerebral hemorrhage from which the decedent died; ......"

Claimant was awarded compensation on the basis of a weekly wage of $19.64, at the rate of $8.64 per week,

beginning September 8, 1934, for a period of 300 weeks, or a total of $2,592, with interest on each payment from the date it should have been made. The board, upon appeal to it, sustained the findings of fact and conclusions of law of the referee. The defendants thereupon appealed to the common pleas of Centre County and that tribunal, in an opinion by FLEMING, P. J., sustained the appeal, set aside the award and entered judgment in favor of the defendants. This appeal by the claimant from that judgment followed.

At the rehearing the testimony of the witnesses for the claimant who appeared at the first hearing was considerably amplified, and Dr. E. H. Harris, the physician first called to attend decedent, was an additional witness. The claimant testified, without objection, that when her husband was brought home from the mine he complained of pain in his right side and said the car "was too much for him." Decedent's daughter, who was a trained nurse, testified her father vomited blood several times after he was brought home, and in preparing him to go to the hospital she noticed several red marks upon his right thigh. Frank Hipple, the brother-in-law, testified decedent said, immediately after he fell, "I believe I hurt myself," and that it required unusual exertion to push the car and its partial load, which weighed about 3,800 pounds in all, over the slight "hump" left by the coal cutting machine.

One of the reasons assigned by the learned president judge of the court below for setting aside the award was that the finding of the referee that the decedent, in pushing the car, "placed his foot against a lump of coal and as he pushed the car the lump of coal broke under his foot, which caused the decedent to be thrown to the ground," was not supported by the evidence. At the re-hearing, Hipple testified upon this subject as follows: "Q. Calling your attention to this time that Mr. Viehdorfer slipped, Mr. Hipple, do you recall

whether or not a lump of coal broke under his feet? A. Yes, a lump of coal flew away from his foot and broke. Q. Flew off from his foot? A. Something flew off from his foot. Q. Do you know whether or not that was one of the lumps of coal that you had for topping off that load? A. Yes, against the face of the place where we were digging coal. Q. Do you recall how large that lump of coal was? A. Oh, I judge maybe eight or ten pounds. Q. An eight or ten pound lump? A. Yes. Q. Did it break up fine? A. I couldn't tell you that. I had to push the car, but I saw it go. Q. About how large was the piece that flew off? A. Well, it kind of split, you know."

It is stated in the opinion of the court below that the suggestion about the breaking of a lump of coal was contained in a leading question by counsel for claimant and that Hipple's testimony at the rehearing was in conflict with some of his statements at the previous one, and should not be accepted as supporting such a finding. The credibility of the witness was for the compensation authorities. The court below and this court, if charged with the responsibility of weighing the evidence and passing upon the credibility of the witnesses, might have reached a conclusion differing from that of the compensation authorities, but it cannot be said there was no evidence supporting the finding rejected by the court.

An important feature of the rehearing was the testimony of Dr. Harris, who testified he examined decedent first at the mine and later at his home; that he found him suffering from a cerebral hemorrhage, with complete paralysis of his left side, arm and leg, and impaired speech, and that he had him removed to the hospital. When asked whether, in his professional opinion, the exertion and fall of the decedent in the mine precipitated the cerebral hemorrhage, his reply was, "Yes, I think that it did from the over-exertion."

Later in his testimony Dr. Harris stated the hardening of the arteries, the high blood pressure and the kidney condition, described at the previous hearing, rendered decedent "more liable to have a ruptured blood vessel." There was an irreconcilable difference of opinion between the medical experts in this case, but it was exclusively for the compensation authorities to decide whose opinion they would adopt, and we cannot say the conclusion at which they arrived was not supported by legally competent evidence.

Another ground assigned by the court below in support of its judgment in favor of the defendants was that the claimant did not produce sufficient evidence of an "accident" within the meaning of the statute, that is, did not show any "abnormal effort or strain by the deceased but merely the natural exertion incident to discharging his duties." Claimant did show that her husband, while in sufficiently good health to work regularly, subjected himself to the strain of attempting to start the car over the "hump," collapsed and fell during the effort, and died within a few hours from a cerebral hemorrhage.

We have repeatedly held that the word "accident," as used in the statute, may, under some circumstances, be held to apply to the injury itself and is not necessarily restricted, in its application, to unforeseen or unexpected external events "constituting the source of the injury." See *Smith v. Pittsburgh Coal Co.,* 71 Pa. Superior Ct. 325.

As was recently said in *Falls v. Tennessee Furniture Co. et al.,* 122 Pa. Superior Ct. 550, 186 A. 272: "An injury by accident may occur in the course of the normal duties of an employe and without over-exertion, when a strain, sprain, or twist causes a break or sudden change in the physical structure or tissues of the body; and the fact that the employe had an inherent defect or a chronic condition, which rendered him more

susceptible to such injury than an ordinary person would have been, will not defeat the right to compensation." On the other hand, "If death comes, during the course of employment, in an ordinary way, natural to the progress of a disease with which one is afflicted, and with which he was smitten before the accident, there can be no recovery." *Clark v. Lehigh Valley Coal Co.,* 264 Pa. 529, 533, 107 A. 858, and cases there cited.

Upon consideration of the entire record, a majority of the members of this court are of opinion that the circumstances surrounding the collapse of decedent at his work take this case out of the line of cases of which *Mooney v. Yeagle et al.,* 107 Pa. Superior Ct. 409, 164 A. 82; *O'Neill v. Lehigh Coal & Navigation Co.,* 108 Pa. Superior Ct. 425, 165 A. 60; *Pelusi v. Mandes et al.,* 109 Pa. Superior Ct. 439, 167 A. 456, and *Foster v. Borough of State College et al.,* 110 Pa. Superior Ct. 452, 168 A. 693, are examples, and bring it within the principles recently considered and restated by RHODES, J., speaking for this court, in *Witt v. Witt's Food Market et al.,* 122 Pa. Superior Ct. 557, 186 A. 275. In that case the employe injured his heart while lifting a quarter of beef and placing it upon a hook four feet above the floor. As there indicated, it was not the external circumstance of lifting that constituted the accident, but "the strain or sprain resulting therefrom and causing 'violence to the physical structure of the body.'" Special attention may be directed to *Cowell v. F. W. Woolworth Co.,* 119 Pa. Superior Ct. 185, 180 A. 752, and *Rice v. Stevens Coal Co.,* 120 Pa. Superior Ct. 15, 181 A. 516, where the employe sustained a sprain or strain while pushing a coal car under a chute, which resulted in an aggravation of an existing condition, and it was held that the injury, even though incurred while performing labor in the usual manner and without over-exertion, was accidental and therefore compensable.

The facts in the case at bar distinguish it from the case of *McFadden v. Lehigh Navigation Coal Co.*, 111 Pa. Superior Ct. 501, 170 A. 314, relied upon by appellees. Decedent and Hipple had loaded and moved four or five cars earlier in the forenoon and under normal conditions; if the hemorrhage had occurred while decedent was moving one of those cars, much could be said in favor of the applicability of the McFadden case.

As to precedents, we think the case of *Samoskie v. Philadelphia & Reading C. & I. Co.*, 280 Pa. 203, 124 A. 471, is most nearly parallel. There is a striking similarity between the circumstances of that case and those here present. As there was evidence in this case which, if believed, would sustain the conclusion of the compensation authorities that the effort put forth in endeavoring to start the mine car caused a rupture of an artery and precipitated the fatal hemorrhage, we sustain the third and fourth assignments.

Judgment reversed and record remitted to the end that judgment may be entered upon the award.