DeEsch *v.* Emmaus Borough et al., Appellants.

Argued December 12, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*Louis Wagner,* with him *T. J. Clary* and *R. A. Smith,* for appellants.

*John F. Stine, Jr.,* with him *Henry L. Snyder,* of *Snyder, Wert & Wilcox,* for appellee.

OPINION BY CUNNINGHAM, J., January 30, 1941:

This is another of those border line compensation cases in which the death of the employee from a heart attack is alleged to have resulted from the putting forth of sudden and unusual exertion. Claimant's husband, fifty-eight years of age, had for many years been Chief of Police of the Borough of Emmaus. He died February 28, 1939, from a coronary thrombosis, with which he was stricken on February 25th. Contending that this fatal heart attack was caused by the exertion which her husband was necessarily and unexpectedly obliged to expend in arresting and removing from the second story of a house, in Emmaus, a large, vigorous and recalcitrant drunken man and taking him in a car to police headquarters in the nearby city of Allentown, claimant filed her claim-petition against the borough. The theory upon which she sought compensation was that the circumstances alleged to have precipitated the fatal heart attack were so sudden and unexpected and so far outside of the ordinary course of decedent's employment as to constitute an "accident," within the meaning of Section 301 of our Workmen's Compensation Act of June 4, 1937, P. L. 1552, 77 PS §§411 and 431. The case is somewhat complicated by the fact that the evidence in behalf of claimant shows that decedent had been under treatment for several years for a heart condition diagnosed as myocarditis.

The defendant employer in its answer denied the death resulted from an injury by an accident in the course of decedent's employment and averred he was, at the time, merely engaged in the performance of his ordinary and usual duties as a policeman. Claimant, therefore, had the burden of showing by medical evidence, amounting to more than mere conjecture, that her husband's death was caused by the alleged overexertion to which he was subjected on February 25, 1939, rather than by the normal progress of his pre-

existing heart condition: *Monahan v. Seeds & Durham, et al.,* 336 Pa. 67, 6 A. 2d 889.

The controlling finding of fact of the referee was that "decedent exerted himself more than usual in making the arrest and his death was the result of over-exertion"; an award was made upon the ground that decedent sustained an accidental injury in the course of his employment. Upon defendant's appeal from the action of the referee the board adopted his findings of fact and conclusions of law and dismissed the appeal. When the defendant appealed to the common pleas, its exceptions were overruled and judgment entered upon the award; the present appeal to this court followed.

Defendant offered no testimony but relied upon the alleged insufficiency of the testimony on behalf of claimant to sustain the award. The following summary, by the chairman of the board, of the evidence indicating the circumstances of the arrest and removal of the prisoner by decedent and his fellow officer, John Sicher, is fully supported by the testimony:

"On February 25, 1939, during the course of his employment with the defendant, the decedent was summoned to a private home to arrest an intoxicated person and remove him to the jail. The decedent and a fellow officer performed this duty, removing the prisoner from the second floor of a private home to their automobile and by means of the automobile to the Allentown police station. The prisoner strenuously resisted the officers in their attempt to remove him from the home; the fellow officer testified that the prisoner was a very strong and heavy man, put up more of a tussle than most intoxicated persons usually do and used his hands and feet all the time trying to get rid of the officers. After leaving the intoxicated person at the Allentown police station, the two officers entered their machine to return to their place of employment. Shortly after entering the automobile, the decedent complained that he was not feeling

well. About ten or fifteen minutes later, while still riding in the machine, the decedent requested the driver to stop the car and he alighted and vomited. He then requested the driver to take him to his home. The fellow officer complied with this request. The decedent's wife summoned a physician who diagnosed the decedent's condition as resulting from a coronary thrombosis. The decedent died three days later on February 28, 1939, the cause of death being given as coronary thrombosis."

As respects the condition of the decedent's heart prior to the date of the alleged unusual exertion, Doctor Kerwin W. Marcks testified he had known decedent a long time and had been his attending physician for a number of years; that in 1937 decedent had an attack of "swelling of the extremities" due to a decompensating heart, but had no pain and was around again within a week; that decedent came to him at frequent intervals for "check ups" and had never had any recurrence of the heart trouble which the witness diagnosed as myocarditis; and that he had examined him as recently as February 18, 1939, and found his heart normal at that time.

Doctor Marcks testified that when called to attend decedent immediately after the latter's return from Allentown on the night of the arrest he found him "in the bathroom retching and straining with severe abdominal pain, . . . . . . perspiring a great deal . . . . . . slightly discolored, a little cyanotic, bluish discoloration," and diagnosed the case "as coronary thrombosis."

Upon cross-examination, the witness said decedent had a "definite coronary disease." An excerpt from his testimony reads: "Q. What is thrombosis? A. A gradual slow formation, you get your occlusion and gradually gets into more of a block that you get complete blockage. Q. How long may it take? A. 2 or

3 days [or] 2 or 3 weeks, or dissolve and not block up at all."

On the question of a causal connection between the exertion put forth by decedent and the coronary thrombosis, Doctor Marcks testified decedent had given him a history to the effect that while trying to get the intoxicated man out of the room decedent noticed "fullness of his chest ...... started to sweat and was a little short of breath and the condition gradually got to the point where he had local pain in his upper abdomen or chest" etc. The witness treated decedent three times that night and testified the patient was more comfortable the next day with the exception of severe pain in his left arm—one of the characteristic symptoms of the heart condition. After stating decedent died early on the morning of the 28th, the witness, in reply to the inquiry whether in his professional opinion the coronary thrombosis had been brought about by the exertion described by the patient, replied, "I have seen him over a period of years and I can say he never had an attack like this before, and I know that condition does cause the attack and I felt it was no question but that was the cause of this condition because it is not infrequently the cause of coronary thrombosis." A question and answer, upon cross-examination, read: "Q. So your theory is there may have been some spasm of the heart muscle? A. No, of the coronary vessel and the exertion and the excitement that this man went through produced a spasm of the coronary vessel and it held blockage to cause a clot which caused his death." Under examination by the referee, Doctor Marcks testified: "Q. Do you have a professional opinion, Doctor, as to the cause of this man's death? A. The cause of his death was coronary thrombosis. Q. Do you have a professional opinion as to what brought that about? A. The exertion that he had that night. Q. You feel that is the cause? A. Yes, because he never had any-

thing like it before and we know that does bring it on, and the attack occurred soon after."

We think this case is ruled in favor of the claimant by the comparable case of *Foster v. State College Borough et al.,* 124 Pa. Superior Ct. 492, 189 A. 786, and the cases therein cited at pages 497-8. In that case the decedent was a fire marshal and a member of a volunteer fire company. His death was caused by an acute heart attack, superinduced by the exertion, directly following his noonday meal, of running to a fire and picking up a section of hose which he started to pull toward the fire.

Reference may also be made to the second class of cases discussed in *Crispin v. Leedom and Worrall Co.,* 142 Pa. Superior Ct. 1, 15 A. 2d 549, at pages 9-11, i. e., cases "in which an employee's heart gives out, or some other organ is injuriously affected, by reason of what is sometimes termed 'overexertion', but is more accurately described as 'unusual' exertion." We quote with approval the following excerpts from the opinion of HENNINGER, J., speaking for the court below: "To carry a heavy, struggling drunken man down a narrow flight of stairs entails more unusual and severe exertion than a fireman running to a fire ...... Neither the referee nor the board decided that simply because decedent collapsed, the exertion must necessarily have been unusual. The finding was based rather on the testimony of the subordinate officer as to the conditions existing in this arrest that were not usually present in the ordinary course of their duties, that is, the heavy weight of the drunken man, his struggles and the necessity of carrying him down a narrow stairway. ...... The arrest of a drunken man may have been an everyday occurrence and certainly it was decedent's duty to do whatever was necessary to subdue him and remove him as a source of annoyance and danger to his family, but, as testified by Officer Sicher, the arrest of this particular inebriate

necessitated a use of force far beyond that usually required. Every one of the elements of this arrest may have been commonplace; the combination of all of them in one arrest was fortuitous and unusual."

Judgment affirmed.