# Updegraff *v.* Pennsylvania Game Commission (et al., Appellant).

Argued April 13, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*S. H. Torchia*, with him *Ralph H. Behney, T. McKeen Chidsey*, Attorney General and *M. Leon Tolochko*, for appellant.

*A. A. Geary*, for appellee.

OPINION BY ROSS, J., July 23, 1948:

Harry J. Updegraff, while in the course of his employment as a game protector, suffered a coronary occlusion which resulted in his death. His widow filed a claim for compensation on the ground that her husband's death resulted from over-exertion in the course of his employment. The referee's award of compensation was affirmed by the board and the court below and this appeal was taken by the State Workmen's Insurance Fund.

The facts are undisputed. At about 2:30 p. m. on March 5, 1942, someone called at the Updegraff home and told the deceased that two dogs were chasing deer at the foot of Baker Hill. Accompanied by his wife, the deceased left his home immediately in his automobile

and they drove a distance of about one mile, parked the car and then proceeded on foot toward the place where it was reported that the dogs were chasing deer. On the previous day there was a fall of snow which covered the ground to the depth of from fourteen to seventeen inches. The deceased proceeded through the snow and underbrush and disappeared from the sight of the claimant, who remained near the car. He failed to return for some period of time and the claimant called to two boys who happened along and asked that they request someone to go in search of her husband. Dr. H. V. Swick, the family physician, and Frank Taylor came to the scene and followed the deceased's tracks until they came to the spot where they found him dead. Dr. Swick testified that deceased died as a result of coronary occlusion. He further testified that deceased had been suffering from a coronary condition of the heart prior to the date of his death.

The question before us is whether the death of the deceased employe was the result of an accident within the meaning of section 301 of the Workmen's Compensation Act.

The claimant has the burden of proving by competent and substantial evidence, either direct or circumstantial, that her husband's death resulted from "something undesigned, unexpected or fortuitous, outside of the ordinary course of events". *Royko v. Logan Coal Co.,* 146 Pa. Superior Ct. 449, 22 A. 2d 434. An injury gives rise to no inference that it results from an accident. In *Adamchick v. Wyoming Valley Collieries Co.,* 332 Pa. 401, 3 A. 2d 377, the Supreme Court stated at page 410: ". . . . to secure compensation there must be proof both of an accident and of an injury; an accident cannot be inferred merely from an injury. There must be some evidence of an accident, either direct or circumstantial, in the latter instance clearly and logically indicating it." If there is substantial and competent evidence of an accident, the mere fact that the employe was afflicted with a

pre-existing physical defect or ailment which rendered him more susceptible to injury than an entirely normal person will not prevent an award. *Gausman v. Pearson Co.*, 284 Pa. 348, 131 A. 247.

The causal connection between the deceased's exertion and his death is clearly shown by the testimony of Dr. Swick, who stated that it "was brought on by over-exertion. There is very little doubt as to that", and in response to the question, "Your professional opinion is that the effort in going down there brought on this?" answered, "Yes, absolutely."

Although he testified that he had treated the deceased for approximately three years prior to his death, Dr. Swick also testified that during that period the deceased had attended to his duties as game protector, and the claimant testified that "he hadn't missed a day's work". Consequently, although Updegraff had a heart condition it did not prevent his performing his usual duties. Updegraff's superior testified that a game protector's general duties are "game protection and game management and all other activities which the Game Commission carry on", and in answer to the question, "And in the event that a report to him of dogs chasing deer what would be his duties in that respect?" answered, "It was his duty to go out and correct the condition." Of course, if—as contended by the appellant—the deceased when stricken was performing his usual work in the usual manner and his death was the result of a normal amount of exertion, his death would not be compensable (*Good v. Pa. Dept. of Property & Supplies*, 346 Pa. 151, 30 A. 2d 434; *Crispin v. Leedom & Worrall Co.*, 341 Pa. 325, 19 A. 2d 400) but that, in our opinion, is not this case.

The referee, affirmed by the board, found as a fact, inter alia: "Eleventh: The death of the decedent was the result of the unusual over-exertion of plodding through the snow and brush on March 5, 1942 in the performance of his duties." It is well settled that an injury resulting from over-exertion or unusual exertion in the

course of employment is compensable. *Skroki v. Crucible Steel Co.*, 292 Pa. 550, 141 A. 480. Cf. collection of cases in *Royko v. Logan Coal Co.*, 146 Pa. Superior Ct. 449, at page 461, 22 A. 2d 434, supra, and *Foster v. State College Boro,* 124 Pa. Superior Ct. 492, at page 497, 189 A. 786. Consequently, if the referee's eleventh finding of fact is supported by substantial and competent testimony, the award in this case must be affirmed.

Dr. Swick, 29 years of age and in "perfect physical condition" (the deceased was 50 years old at the time of his death) testified as follows: "Q. Could you give us any idea of the conditions as they existed there in going down? A. Very, very difficult. I followed his tracks and I must say that I ran all the way down. When I got there I could actually taste blood in my mouth. Q. The tracks had been somewhat beaten when you went down? A. Yes, I didn't have to break the track. I used his. . . . Q. Doctor, what would you say as to that particular snowfall as compared to others? A. It is the worst I ever saw." and testified further: "It was a heavy snow, so wet it would just ball up on your feet and you could hardly get one foot up from the other. Not the greatest depth but it was the consistency of the snow that packed but yet didn't give you any traction." Frank Taylor, who accompanied Dr. Swick to where they found the body, testified as follows: "Q. Do you remember about the condition of the snow there at that time? A. I would say it was better than 17 inches up to there because I made the remark coming up through the brush and snow I was played out. . . . Q. Now in traveling through the snow how did it affect you? A. It just took my wind. I could hardly get through. It wasn't in a field—it was in the brush and most mighty hard to get through. It wasn't cleared out or anything and was terribly thick and hard to get through." R. L. Snyder, who attempted unsuccessfully to reach the deceased's body, testified: "Q. Had you had any experience in traveling through the snow? A. I seemed very anxious because they didn't

get Harry's body in, and I attempted to go up stream along the bank to find out what was wrong, and I just about played out. Q. How far did you get? A. Probably 40 or 50 feet. Q. It just about played you out? A. Yes, I got about 50 feet was all. Q. It wasn't on account of any inefficiency on your part, or was it? A. That was about the heaviest snow I ever tried to wade."

From this testimony it seems clear that the deceased, in the performance of his duties, encountered unusually difficult conditions ("worst snow", "heaviest snow I ever tried to wade", difficulty of "traction", brush "terribly thick" and "most mighty hard to get through") which required unusual exertion. This conclusion is inescapable when we consider the physical effect on those who traversed the same route through the snow or attempted to do so.

In our opinion, this case cannot be distinguished from *DeEsch v. Emmaus Borough,* 143 Pa. Superior Ct. 225, 18 A. 2d 89, (allocatur refused, 143 Pa. Superior Ct. XXI). In that case, a policeman, with a pre-existing ailment, while making an arrest, suffered a coronary thrombosis which caused his death three days later. In affirming an award of compensation, we quoted with approval from the opinion of Judge Henninger of the Court of Common Pleas of Lehigh County as follows: " . . . Neither the referee nor the board decided that simply because decedent collapsed, the exertion must necessarily have been unusual. The finding was based rather on the testimony of the subordinate officer as to the conditions existing in this arrest that were not usually present in the ordinary course of their duties, that is, the heavy weight of the drunken man, his struggles and the necessity of carrying him down a narrow stairway. . . . The arrest of a drunken man may have been an everyday occurrence and certainly it was decedent's duty to do whatever was necessary to subdue him and remove him as a source of annoyance and danger to his family, but, as testified by Officer Sicher, the arrest of this par-

ticular inebriate necessitated a use of force far beyond that usually required."

It is our opinion that the referee's eleventh finding of fact is supported by substantial and competent evidence and the inferences reasonably deducible therefrom (*Paulin v. Williams & Co., Inc.*, 122 Pa. Superior Ct. 462, 186 A. 415) and that the claimant's husband met his death as the result of an accident within the meaning of the Act.

Judgment affirmed.