Miller *v.* Schiffner et al., Appellants.

Argued June 13, 1961. Before ERVIN, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., and WRIGHT, J., absent).

*David B. Skillman,* for appellants.

*I. Raymond Kremer,* with him *Henry Villa,* and *Reabuck and Villa,* for appellee.

OPINION BY ERVIN, J., September 12, 1961:

In this workmen's compensation case the referee made an award which was affirmed by the board and the court below.

By this appeal we are asked to determine whether the evidence presented by claimant met the burden of proving (1) that her husband was actually engaged in the furtherance of the business of his employer at the time of his death; (2) that her husband was killed by an "accident" within the meaning of the act; and (3) that her husband did not die as a result of the natural progress of a mortal disease. The referee and the board found these questions for the claimant. Our problem is to determine whether there was legally competent evidence to support the findings: *Curran v. Knipe & Sons, Inc. et al.,* 185 Pa. Superior Ct. 540, 545, 138 A. 2d 251.

As the board found for the claimant, we must view the evidence in the light most favorable to the claimant and give her the benefit of all inferences reasonably deducible therefrom: *Rice v. Public Meat Market,* 166 Pa. Superior Ct. 328, 329, 70 A. 2d 443.

Claimant's husband, Lester Miller, died suddenly in the front yard of his home about 9:30 a.m. on December 20, 1951. He had been attempting to start his employer's truck, which was standing in the front yard and which his employer had loaned to him for the purpose of getting him to and from his work. On the morning of his death, at about 6:30 he went out to

start the motor of the truck. He returned to the house and said to his wife, "I cannot get the truck started." He stayed in the house and drank a cup of coffee, which was his usual breakfast, and following this he resumed his efforts to start the truck. From 6:30 a.m. to 9:30 a.m. he tried to get the truck started. Four or five times he drew water from a well by pulling up a bucket. The surface of the water in the well was 50 feet below the surface of the ground. Each time he carried the bucket of water into the house and heated it on the stove and then carried it to the car "sort of in a running step to get there so the water couldn't get cold," and poured it into the radiator. In addition to this he cleaned the battery posts and the spark plugs. To be high enough to perform these tasks he placed a concrete block beside the truck's hood. On the last occasion when decedent came to the house he told his wife he had to get the truck started because he had a job at which he had to be at 8:00 a.m.; that he would try once more and then would call the defendant to come help him.

The son of the decedent described how his father went to a neighbor's house to call the defendant; he went as fast as he could on snow and ice a distance of one and one-half to two blocks; he slipped several times. There was ice on the ground around the truck. The last time he went to the truck he placed one foot up and put it on the cement block when he slipped, swung around, went over and down. The claimant, Mrs. Miller, ran to where the decedent fell. He was flat on his face and she turned him over and she heard a noise coming out of his mouth and hurried away to get blankets. She later testified to some signs of life which she said she observed subsequent to the fall. When the doctor arrived within about an hour from the fall, Miller was pronounced dead. An autopsy was performed the next morning. The report which was issued

gave as the cause of death: "1. Coronary occlusion 2. Arteriosclerotic heart disease."

The case was first heard by Referee Carmalt, who dismissed the claimant's petition. The claimant appealed to the board. The board remanded the record for the appointment of an impartial physician. Referee Eaby made an award to the claimant. The board and the court below affirmed this award. Three doctors, including the impartial physician, testified that in their opinion the coronary occlusion of which Mr. Miller died was superinduced by exertion, excitement and anxiety, with cold as a possible element. Dr. Gouley, who testified for the defendant, stated that, in his opinion, none of the exertions singly or in combination caused the coronary occlusion. Dr. Chidsey, who testified for defendant, stated that none of the items of exertion, taken singly or in combination, caused the death of Mr. Miller.

From the above it will be apparent that there was a dispute between the doctors as to the cause of death. It was for the board to determine which of the two opinions to accept. Its decision is binding upon us.

When an injury occurs off the premises of the employer, to be compensable the employe must be actually engaged, rather than constructively engaged, in the business or affairs of his employer: *Maguire v. James Lees & Sons Co.*, 273 Pa. 85, 116 A. 679. We believe that the facts in the present case were sufficient to justify a finding by the board that Mr. Miller was actually engaged in the business or affairs of his employer at the time of his death. He was working upon the truck of his employer so that he could make it operative and take it to the place where his employer had a contract at that particular time. We think that it was a fair inference for the board to draw that the truck would be used in the employer's business when it reached the site of the contract. Furthermore, Mr.

Miller was actually paid by his employer for one hour on the morning of his death. The testimony of his employer on this subject is as follows: "A. As far as I was advised I have one hour on his payroll for that morning, that is what I was advised and that is what I put on the payroll. I just cannot say who told me, you see, I keep the time for the firm. Q. You knew he had your truck to get to and from his house? A. Yes. Q. What kind of a truck was it? A. International K-6. Q. That is about five tons? A. Average. Q. During the time he was getting to and from his house to your garage and back to his house that was time he was paid for? A. That's right, I allowed him a half hour for the morning and a half hour for the evening."

What we said in the case of *Muir v. Wilson Coal Co.,* 194 Pa. Superior Ct. 487, 489, 168 A. 2d 588, is applicable here: "The employer must have had some good reason for paying Muir from 7:00 a.m., when he was supposed to depart from his home. The pay was started at this point probably because of the fact that Muir would not always be going to the same place to perform his work. We cannot conceive of the employer paying an employee for time of service if it were not for the employer's benefit and in furtherance of employer's business. This fact alone, we believe, is sufficient to make this case fall within one of the exceptions to the general rule."

We are also of the opinion that Mr. Miller's death was the result of an accident and was not the result of natural causes. The fall was itself an accident. The evidence of the claimant indicates that Mr. Miller slipped and fell. If the fall were attributable to a pre-existing condition it would nevertheless constitute an accident: *Allen v. Patterson-Emerson-Comstock,* 180 Pa. Superior Ct. 286, 292, 119 A. 2d 832. It is well settled that an injury resulting from overexertion or unusual exertion is compensable: *Skroki v. Crucible*

*Steel Co.,* 292 Pa. 550, 141 A. 480. Cf. collection of cases in *Foster v. State College Boro.,* 124 Pa. Superior Ct. 492, 497, 189 A. 786; *Royko v. Logan Coal Co.,* 146 Pa. Superior Ct. 449, 461, 22 A. 2d 434.

The fact that overexertion and anxiety aggravated a pre-existing disease does not bar compensation and such overexertion may constitute an accident: *Lorigan v. W. O. Gulbranson, Inc.,* 184 Pa. Superior Ct. 251, 132 A. 2d 695.

Judgment affirmed.

WOODSIDE, J., concurs in the result.