# Byrne, Appellant, *v.* Henry A. Hitner's Sons Co.

## Byrne *v.* Golder (et al., Appellant).

*Master and servant—Lending employee to another—Particular employment.*

1. Although an employer may, at times, lease plant and men to do outside work, that is not enough to show engagement in such business generally.

2. Where one person lends his servant to another for a particular employment, the servant, for anything done in the particular employment, must be dealt with as a servant of the man to whom

he is loaned, although he remains the general servant of the person who loaned him.

*Workmen's compensation — Protection of employees — Subcontractors — Principal contractors—Agreement—Insurance—Parties —Amendment—Act June 2, 1915, P. L. 736.*

3. The Workmen's Compensation Act of June 2, 1915, P. L. 736, fixed on the principal contractor the primary obligation of paying compensation to injured workmen.

4. The principal contractor may avoid such liability either by rejecting article III of the act, by posting notices, or by entering into an agreement with the subcontractor, under section 302 (b), whereby the subcontractor agrees to become responsible for the payment of compensation to his own employees.

5. Where the principal contractor and the subcontractor agree that the subcontractor shall carry compensation insurance for his own employees, it is in effect an agreement that the subcontractor will pay his employees the compensation due under the provisions of article III.

6. When, in pursuance of such agreement, the subcontractor has taken out insurance, or otherwise secures payment of compensation, the State no longer has use for the principal or statutory employer under section 203.

7. While both statutory employer and the subcontractor by accepting article III are legally liable to pay compensation to the same employee, only one employer is required to pay compensation.

8. When, under the authority of section 302 (b), plus the agreement between the statutory employer and the subcontractor, an assured compensation has been provided for to be paid by the latter, the injured employee and his dependents must receive from the subcontractor the compensation specified under the act; and the principal contractor is no longer bound. But if, for any reason, the subcontractor or his insurer is not responsible, then, under sections 203 and 302 (b), the principal contractor must pay compensation.

9. It is not necessary for the employee of the subcontractor to be a party to the agreement between the principal contractor and the subcontractor, although he may be made a party if it is deemed desirable.

10. The evidence necessary to show an express agreement need be very slight where both principal contractor and subcontractor actually carry insurance.

11. It cannot be contended that the employee or his dependents, through such construction of the act, may be imposed on through secret agreements whereby no one would pay or carry insurance to pay compensation.

12. Where an employee of a subcontractor·has been killed, and it appears that the principal contractor and the subcontractor had entered into the agreement contemplated by section 302 (b) of the act, the widow of the deceased need not file separate petitions against the owner and the contractor or the subcontractor.

13. All that she need do is to file a petition setting forth the facts in the case, who employed her husband, the principal contractor, if known, and any additional facts that may be necessary in connection with the employment and the injury.

14. The parties named in such petition must appear; if it develops that there are others who may be liable in addition to those named, the board may order the proceedings amended so that all parties may be brought on the record.

15. Until the board determines who is liable under the act,.none are released.

16. After a final order has been made fixing the responsibility on the subcontractor and his insurer, the principal contractor is no longer bound, and is released entirely from liability.

17. If proceedings are in the first instance against the statutory employer, he may show his agreement with the subcontractor, and the additional fact that the subcontractor has actually taken out insurance, and the case will then proceed as indicated above.

Argued January 18, 1927.   Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 176, 177 and 184, Jan. T., 1927, by plaintiff and defendants' insurance carrier, from judgments of C. P. No. 4, Phila. Co., June T., 1926, No. 22496 and 22701, affirming decision of workmen's compensation board in cases of Ellen Byrne v. Henry A. Hitner's Sons Co. and Maryland Casualty Co., insurance carrier, and Ellen Byrne v. Mandes Golder, trading as Golder Construction Co., and United States Fidelity and Guaranty Co., insurance carrier.   Judgment in No. 184 reversed and judgment entered against Henry A. Hitner's Sons Co.   Judgments in 176 and 177, reversed and judgments entered for defendants, Mandes Golder and United States Fidelity and Guaranty Co.

Appeals from decisions of the workmen's compensation board.   Before FINLETTER, J.

The opinion of the Supreme Court states the facts.

Decisions affirmed. Plaintiff and defendants' insurance carrier appealed.

*Errors assigned,* inter alia, were judgments in respective cases, quoting record.

*Clement B. Wood,* of *Morgan, Lewis & Bockius,* with him *Henry R. Heebner,* for plaintiff, appellant.—Henry A. Hitner's Sons Co., a subcontractor under Golder Construction Co., is liable for compensation to dependents of the decedent, Michael Byrne: Lecker v. Valentine, 286 Pa. 418; Atherholdt v. Stoddart, 286 Pa. 278; Qualp v. Stewart Co., 266 Pa. 502; Tarr v. Heckla, 265 Pa. 519.

Where a principal contractor sublets part of the work which such principal contractor has undertaken to a subcontractor, although no control is reserved over the means of its accomplishment and the employment is an independent one, the principal contractor is liable to pay compensation to employees of the subcontractor under the provisions of section 302 (b) of the act: Smith v. Ins. Fund, 262 Pa. 286; Kelley v. R. R., 270 Pa. 426; Simonton v. Morton, 275 Pa. 562; Colleoni v. Del. & Hudson Co., 274 Pa. 319; McGrath v. Refining Co., 282 Pa. 265; Qualp v. Stewart Co., 266 Pa. 502; Vorbnoff v. Machine Co., 286 Pa. 199; Smith v. Tapestry Co., 285 Pa. 145; Lecker v. Valentine, 286 Pa. 418; Atherholt v. Stoddart, 286 Pa. 278.

The evidence in this case shows that the premises were either occupied by or under the control of the principal contractor, who is therefore liable to pay compensation to the claimant: Meucci v. Coal Co., 279 Pa. 184.

*Frederick H. Spotts,* with him *Layton M. Schoch,* for appellant, United States Fidelity & Guaranty Co.—Where a principal contractor lets out work to another but reserves no control over the means of its accomplish-

ment the employment is an independent one and the contractor is not liable to pay compensation under the provisions of the Workmen's Compensation Act: Smith v. Ins. Fund, 262 Pa. 286; Kelly v. R. R., 270 Pa. 426; Colleoni v. Del. & Hudson Co., 274 Pa. 319; Simonton v. Morton, 275 Pa. 562; McGrath v. Sugar Co., 282 Pa. 265.

Where one company loans or hires its servant to another but the servant remains subject to the direction and control of the former, the latter cannot be required to pay compensation for injuries to the servant: Tarr v. Coal & Coke Co., 265 Pa. 519; Atherholt v. Stoddart, 286 Pa. 278; Lecker v. Valentine, 286 Pa. 418; Puhlman v. Express Co., 259 Pa. 393; Crouse v. Lubin, 260 Pa. 329.

Where the evidence discloses that the premises were neither occupied by nor under the control of the principal contractor, he is not liable to pay compensation for the death of an employee of a subcontractor: Gallivan v. Wark Co., 288 Pa. 443.

*Louis Wagner, R. A. Smith* and *W. F. Whittle,* for Henry A. Hitner's Sons Co., cited: Matlack v. Chalfant, 69 Pa. Superior Ct. 49; Thatcher v. Pierce, 281 Pa. 16; Funston v. Ingenito, 282 Pa. 124.

OPINION BY MR. JUSTICE KEPHART, May 16, 1927:

Claimant filed three petitions under the Workmen's Compensation Act, against the Golder Construction Company, Henry A. Hitner's Sons Co., and the Reading Company. The Golder Construction Co. had a contract with the City of Philadelphia and the Reading Company to remove a bridge crossing a street, and build a new one. The first named company sublet the part of the contract to remove the old bridge, to Hitner's Sons Co., and the latter employed the Reading Company's wrecking force to assist in taking down and removing the two bridge girders. In doing this work,

Byrne, an employee of the Reading Company, was crushed to death by the girder. The court below held the Golder Construction Co., principal contractor, liable under the Compensation Act.

There is no controversy as to the cause of the accident or the dependency of the widow and children. The question to be determined by the board and the court below was, Which of the parties was responsible to the dependents under the Compensation Act? It is urged by the Hitner and Golder companies that the Reading Company, in doing the work for them, was an independent contractor, solely responsible either in damages or for compensation to the injured employee's dependents. The referee, the board and the court below held that deceased was a loaned or hired employee of the Hitner Co., the subcontractor under the principle of law announced in Tarr v. Heckla, 265 Pa. 519, as applied to the Compensation Act, but that the Golder Construction Co., the general contractor should pay the compensation.

We need not discuss the evidence on which this finding was based; it was sufficient for the purpose for which it was offered, to show that the plant and men were under the Hitner's control as to the manner and method of doing the work, and that the Reading Company was not engaged in the business of hiring its men or equipment to do similar work. Although an employer may, at times, lease plant and men to do outside work, that is not enough to show engagement in the business generally. The question to be answered is, as it is stated in Scheel v. Shaw, 60 Pa. Superior Ct. 73, "Was the act done in a business in which the master is in control as a proprietor, so that he can at any time stop or continue it, and determine the way in which it shall be done, not merely in reference to the result reached, but in reference to the method of reaching the result, comprehending not only the general business which the act is intended to promote, but the particular business which calls for the act in the smallest subdivision that can be

made of the business in reference to control and proprietorship"?   When the act is so performed, then "where one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as a servant of the man to whom he is lent, although he remains the general servant of the person who lent him": Tarr v. Heckla, supra.

This brings us to the more important question: Which of the two contractors is responsible for compensation to the employee's widow?   It is unnecessary to discuss or decide preliminarily the question of "premises," "control," or "independent contractor."   We will assume that the Golder Construction Company was the principal contractor or employer, and permitted the entry, on the premises occupied by it and under its control, of a laborer, hired by a subcontractor for the performance on such premises of a part of the principal contractor's work that had been entrusted to such subcontractor. The relationships between the principal contractor, the subcontractor and the employee are defined in article II, sections 201, 202, and 203 and article III, section 302 (a) and (b).

From some of the oral and printed arguments, it appears there is an evident misconception of the purpose of the Workmen's Compensation Act.   It is what its name implies,—a compensation act for workmen, and not an act for the protection of subcontractors.   The State's first consideration was that an employee should be paid fixed compensation for injuries sustained in the course of his employment, ordinarily by the real employer.

In Gallivan v. Wark Co., 288 Pa. 443, we reviewed the attitude of the State toward engagements covering an entire operation, or part thereof, under one contract which might entail many subsidiary contracts to be performed on the same premises.   It was pointed out that the legislative course, in bringing in the principal con-

tractor or what may be called the statutory employer, was of such an unusual nature, the legal relations thus created being unknown to common law, that in working out the purpose of the legislature, the effect must be carefully considered. Otherwise we might totally fail to attain the purpose intended, namely, that of making certain what would be doubtful situations as to compensation. The principal contractor became identified with the act through sections 203 of article II, and 302 (b) of article III. We said in Qualp v. James Stewart Co., 266 Pa. 502, 509, that "The legislature wanted to definitely fix some responsible party with the obligation of paying compensation to injured workmen, and the party selected was the first whose duty it was to assume control of the work. It selected the first in succession from the owner, believing the owner would contract with none but responsible persons. He was the first in the field, in the contracting scheme of work, the head of the endeavor, the person to whom an employee would naturally look."

This responsibility may be avoided, but, if it is, it can be done only in one of the two methods pointed out by the act. First, the statutory employer may reject article III by posting notices. While, by so doing, the principal contractor, the statutory employer, is relieved under article III of paying compensation, he is turned back to other phases of the act as to damages; but this rejection automatically brings the real employer, the subcontractor, into the picture. Second, he may enter into an agreement as contemplated in section 302 (b), which will be discussed later.

When the statutory employer accepts article III and agrees to pay compensation to the subcontractor's employees for injuries received in the course of employment, he meets all conditions imposed by the State. He agrees to become what might be called a quasi guarantor for compensation to employees injured while working on the premises under a contract which has relation to a

general contract in which he is principal. But he should not be punished because he has agreed to do this; the act does not require that under all circumstances he must pay compensation to all injured employees who may be engaged on premises occupied by him or under his control, without regard to the relief offered by the act against the real employer. It is true that when the statutory employer accepts article III, the subcontractor is relieved of liability; but this is only "unless otherwise expressly agreed." It was not intended that the statutory employer should, at all times, pay the compensation when allowable.

The proviso of article III reads: "Where article III binds such [statutory] employer and such laborer . . . . . ., it shall not be in effect between the intermediate employer or contractor and such laborer . . . . . . unless otherwise expressly agreed [between the statutory employer and the subcontractor]." This is the second means by which the statutory employer may avoid paying compensation. "Where article III binds such [statutory] employer," it means that under section 302 (b) the statutory "employer agrees to pay to such laborer compensation [under article III]." The proviso has reference primarily to those who may become liable for compensation, in this case the statutory employer, and the real employer, the subcontractor. The agreement contemplates the payment of compensation. But when the subcontractor and the statutory employer agree that the subcontractor shall carry compensation insurance for his own employees it is in effect an agreement that the subcontractor will pay his employees the compensation due under the provisions of article III. When, in pursuance of that agreement, the subcontractor has taken out insurance, or is otherwise legally responsible, the State no longer has use for the statutory employer under section 203.

While it is true both the statutory employer and the subcontractor, the real employer, by accepting article

III (which follows from this "express agreement") are legally obligated to pay compensation to the same employee, we stated in the Gallivan Case, supra, that only one employer is required to pay elective compensation. No other employer, or one standing in that relation, can be called on to pay it the second time. So, while two employers may, under section 302 (b), be liable for compensation, and each may be carrying insurance, only one must pay. The obvious intent of the proviso was to relieve the statutory employer. The subcontractor is the real employer; he pays the wages of the employee and alone can direct his movements, discharge or discipline him. The statutory employer has no authority over him, and it is only because of the subcontractor's possible dereliction of duty that the principal contractor is brought into the act. But when, under authority of section 302 (b), plus the agreement between the statutory employer and the subcontractor, an assured compensation has been provided for to be paid by the latter, the injured employee or his dependents must receive from the subcontractor the compensation specified under the act. The principal contractor is no longer bound and is not required to answer "in the same manner and to the same extent as to his own employee." To reason on any other basis would lead to an absurdity and foist on the principal contractor a responsibility not contemplated by the Compensation Act and out of all proportion to reasonable requirements.

It is urged that the employee must be a party to such agreements. The employee selected his paymaster in the person of the subcontractor, and, in the general scheme of the act, the real employer is first considered: see section 302 (a). The other relations are imposed by the law. As to these, the only matter the employee is interested in is that his compensation be reasonably secured from a reliable source. When that is done he has no further interest. Until that is done, the State, through section 203, article II, and section 302 (a) and

(b), keeps a grip on all persons standing in any relation to him. That should satisfy the employee. Of course, we do not mean to limit the parties to the "agreement" so as to exclude an employee. He may become a party, but it is not necessary that he should do so. He may be joined to relieve the statutory employer entirely from responsibility so that he need not wait for the board's decision.

The evidence necessary to show an express agreement need be very slight where both the principal contractor and the subcontractor carry insurance. Here we have ample evidence to find one. In the contract memorandum, Henry A. Hitner's Sons Co. agreed with the Golder Construction Company that they (Henry A. Hitner's Sons Co.) were protected by employer's liability insurance. If this has any meaning, it is that the Hitner Co. not only has its own employees covered by insurance, but will keep that insurance paid up, and pay the compensation as required under article III of the act. It appears that the Hitner Co., the subcontractor, has in fact taken out and kept in force the required insurance. Under these circumstances, compensation must be paid by the Hitner Co., and, when this is done, the responsibility of the general contractor (the statutory employer under section 203) is at an end.

It is further contended that the employee or his dependents, through the construction here placed upon the act, may be imposed on through secret agreements whereby none would pay or carry insurance to pay compensation. If such were possible, it would be nothing more than one of the hazards acompanying those bent on dealing dishonestly with employees. But the State does its best to prevent it. Take the present case. It was not necessary, under the act, for the widow to be put to the inconvenience of filing three separate petitions with three separate counsel fees. All that is contemplated is that she file a petition setting forth the facts in her case, who employed her husband,

the principal contractor, if known, and whatever facts that may be necessary in connection with the employment and the injury. The parties named must appear; if it develops there are others who may be liable in addition to those named in her petition, the board may order the proceedings amended so that all parties may be brought on the record. All parties being present, the board proceeds to determine who is responsible under the act as here interpreted. Until that is done, none are released, and if, for any reason, the subcontractor or his insurer are irresponsible, then, under sections 203 and 302 (b), the principal contractor must respond. An agreement, standing alone, does not defeat the State's intention, for the reason that, coupled with and made part of it is the fact that not only must the subcontractor agree to pay, but must carry insurance, or be otherwise legally responsible and actually pay. Under 302 (b) and the agreement, compensation must be paid or secured.

The final order awarding definite compensation must determine all these matters as well as the financial responsibility of the subcontractor and the insurer. After such order, if against the subcontractor, the statutory employer is no longer bound and is released entirely from liability. Consequently, whether there be secret agreements or not, the scheme is so adjusted that it is difficult for the responsible party to escape payment of compensation. Proceedings may in the first instance be instituted against the statutory employer, who may show his agreement with the subcontractor, and the additional fact that the subcontractor has actually taken out the insurance. The case will then proceed as indicated.

Where the statutory employer accepts article III and agrees with the subcontractor that the latter will carry compensation insurance for the protection of his own employee, the party then liable is the subcontractor;

the statutory employer, after an order thus fixing responsibility, is relieved from further liability.

The judgment in No. 184, January Term, 1927, is reversed and it is ordered that judgment be entered in favor of Ellen Byrne v. Henry A. Hitner's Sons Co. for the amount found to be due her by the referee as compensation, costs to be paid by appellee.

The judgments in Nos. 176 and 177, January Term, 1927, is reversed, and it is directed that judgments be entered for the defendants in those proceedings, costs in this proceeding to be paid by appellee.