## Sames *v.* Boro. of Perkasie et al.

Argued November 18, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*Buckman & Buckman,* for appellant.—Decedent was not an employee within the provisions of Act of May

14, 1925, P. L. 714; Poffinberger v. Martin Co., 83 Pa. Superior Ct. 524; Maguire v. James Lees & Sons Co., 273 Pa. 85.

*Mark Thatcher*, for appellee, cited: Tarr v. Hecla Coal Co., 265 Pa. 519; Cymbor v. Binder Coal Co. et al., 285 Pa. 440.

OPINION BY LINN, J., December 12, 1930:

This appeal by the compensation insurer of the borough of Perkasie also raises questions on the right of a member of a volunteer fire company to compensation, in circumstances in a legal sense, quite like those considered in Sonnett v. Stowe Township, 100 Pa. Superior Ct. 397. Appellant states three questions involved: 1. Was a fireman, fatally injured while riding on his company's fire truck on the way to a fire drill, employed within the Act of May 14, 1925, P. L. 714? 2. In the circumstances shown in this record, was he "loaned" to another municipality? 3. Had the board authority to substitute its findings of fact for those of the referee?

Sames was a member of a volunteer fire company in the borough of Perkasie. It was customary for such companies in the community about Perkasie and Quakertown to assist each other in extinguishing fires on call by the municipality in need of help. Some time prior to April, 1926, the chief of the Quakertown fire department and the chief of the Perkasie fire department agreed that "in the near future he would send out a call to the neighboring fire companies for a fire drill in Quakertown to see how they would protect that section of Quakertown around the Bush Hotel in the event of a fire." Accordingly on April 1st, the Quakertown chief sent the following message to neighboring fire companies: "Send your pumper and men to Quakertown immediately." On receiving that message, the Perkasie chief gave "an alarm for an out-

of-town call and in response to this the decedent reported at the fire house......and mounted the truck.'' The men were not advised by the chief that they were going to a fire drill, but assumed, or were entitled to assume, that they were going to a fire. While going toward Quakertown, which was about 6 miles distant, the truck was ditched, and Sames sustained injuries resulting in his death. A claim was filed against the borough of Perkasie, which the referee dismissed on the ground that Sames was 'loaned' to Quakertown. On appeal to the Workmen's Compensation Board, the record was remitted to the referee in order that the borough of Quakertown might be made a party and for further proceedings. A claim was then filed against Quakertown, and after hearing the referee made an award in favor of claimant against Quakertown. That was appealed, and the board, with both appeals before it, held that Sames was not a loaned employee and made an award against the borough of Perkasie. On appeal to the common pleas, that conclusion was affirmed and judgment was entered for $4704.14. The insurance carrier appeals.

1. The definition of employee in the original act was enlarged by the Act of May 14, 1925 P. L. 714 as follows: ''That in addition to those persons included within the definition of the word 'employee', as defined in section one hundred and four of the act to which this is a supplement, there shall be included all members of volunteer fire companies of the various cities, boroughs, incorporated towns, and townships who shall be and are hereby declared to be 'employees' of such cities, boroughs, incorporated towns, townships for all the purposes of said act, and shall be entitled to receive compensation in case of injuries received while actually engaged as firemen or while going to or returning from any fire which the fire companies of which they are members shall have attended.'' It

is not disputed that Sames was a member of a volunteer company who was fatally injured while obeying the instructions of his chief to proceed with the company's truck to Quakertown. He came to the fire house in response to the alarm for an out-of-town call and took his place on the truck; for all he knew, there was a fire. From the time he so took his place on the truck, if not sooner, he was "actually engaged as" fireman, within the meaning of the statute. The act must be liberally construed to accomplish the purpose of the legislation. That the alarm was false, in the sense that there was no fire, is immaterial; firemen have many obvious duties in and about the management, care, inspection and repair of their equipment and apparatus during the performance of which they are as much "actually engaged as firemen" as if they were pouring water on a fire. The question is, was the servant serving the master. If such fire drills are a normal method of acquiring experience and efficiency in a fire company, and there would seem to be no doubt of that, the municipality profits by it. Such service is clearly within the words "actually engaged as firemen." At bottom, the important question here is one of law: whether the evidence sustains the finding made by the board; we all agree that it supports the finding that Sames was actually engaged as a fireman, who was injured in the course of his employment.

2. Was he a loaned employee? The accident occurred while the firemen were on their way from Perkasie to Quakertown; though the evidence does not state how far they had gone, they had not yet reached Quakertown. They were subject to the orders of the Perkasie chief who was riding ahead of them in another car; he might at any moment have sent them back, even if it were possible for them ever to have become subject to the orders of the Quakertown fire

chief, they had not yet reached that stage. Moreover, there is nothing to indicate that Sames had consented to substitute the Quakertown authorities for the Perkasie authorities by whom, according to the compensation statute, he was employed. An employee may not be loaned without his consent (Tarr v. Hecla Coal Co. 265 Pa. 519, 522 and cases following it) for, as in any other contract, consent is necessary to a contract of employment; consent may be implied from circumstances, but an employee cannot be deprived of his right to decline to be loaned without evidence to show that he knew that he was transferring for the time being, the performance of his promise to work. Whether an employee consents to the transfer of his service to another employer, therefore depends on an inference of fact, and that inference is to be made by the referee or the board, leaving to the court to determine whether there is evidence to support the finding of fact.

The referee found that Sames was an employee of Quakertown at the time of the accident. Our question is, does the evidence support that inference? We first see him as an employee of Perkasie by his membership in the fire company; in that capacity he responded to the fire alarm and took his place on the truck; he had certain duties to perform on the truck on its way to Quakertown; he knew nothing of the arrangement for a fire drill, and was entitled to assume that he was going to a fire; he never reached Quakertown, never was subject to the control (see Byrne v. Hiltner et al., 290 Pa. 225; Persing v. Traction Co., 294 Pa. 230; Sgattone v. Mulholland et al., 290 Pa. 341) of the Quakertown authorities. There is nothing in the record to justify the finding that he changed his status from employee of Perkasie to employee of Quakertown The referee was therefore wrong in his finding of fact; it was ''unsupported by competent evidence:'' Sec. 427

of the Act of 1919, and see Vorbnoff v. Mesta Machine Co., 286 Pa. 199, 205.

3. We do not understand that the third question arises on the record. In the report of the board it is said, that after the claimant appealed from the finding of the referee that Sames was a loaned employee and that Perkasie was not liable, "the board remitted the record to the referee in order that the liability of the borough of Quakertown might be litigated in the same action. A claim petition was then filed against the borough of Quakertown and the referee awarded compensation against it. From that award the defendant appealed. We are now to decide on all these appeals which borough, if any, is liable to the claimant." The board concludes that Sames was an employee of Perkasie, saying also: "The evidence shows that the test alarm in this case was not intended solely for the benefit of Quakertown and that that borough was selected because of its central location. The test was primarily for the benefit of all the participating companies. [There is evidence that fire companies from a number of municipalities participated] That it was a test alarm was known or should have been known by the chief of the Perkasie department and we do not see how it could be held that the Perkasie firemen were loaned as employees to Quakertown when making this test. Therefor, in accordance with the power vested in the board by the amendatory Act of 1919, Vorbnoff v. Mesta Machine Co. 286 Pa. 199, the board now finds as a fact that the claimant's husband at the time of the accidental injury was an employee of the borough of Perkasie and not of the borough of Quakertown ......." An order was then made directing the insurance carrier of the borough of Perkasie to pay to decedent's dependents the sum mentioned.

Now appellant contends that by its action so quoted,

the board reversed "the referee in his findings of fact." In the circumstances we think that was the duty of the board. Appellant's contention is predicated on Section 418 of the Act of 1919 P. L. 642, 662 providing that "...... findings of fact made by referee to whom a petition has been assigned or any question of fact has been referred under the provisions of Section 419, shall be final, unless the board shall, under the provisions of Section 425 of this article, grant a hearing de novo or a re-hearing." Section 419 authorizes the board to "refer any question of fact arising under any petition, including a petition for commutation heard by it, to a referee to hear evidence and report to the board the testimony taken before him or such testimony and findings of fact thereon as the board may order." It will have been observed that the board was not making a reference of "any question of fact arising under any petition ......" as stated in Section 419, (in which case his finding would have been final: Vonot v. Hudson Coal Co. 285 Pa. 385, 393). Here, when the appeal of claimant first came to the board, the board noticed in the report of the referee the possible relation of the borough of Quakertown to the transaction and said "When a question arises as to which of several defendants is liable for the payment of compensation it has been the practice of the board to suggest the desirability of bringing them all upon the record by petition and having the evidence made the same in all cases. We will therefore return this record to the referee so that the claimant may be given an opportunity to proceed as suggested." The claimant proceeded in accordance with that suggestion, with the result already stated.

That was not a reference to a referee to find a question of fact arising under any petition within the terms of Sections 418 and 419; it was a direction

that a possibly related proceeding be brought by claimant, so that, if an appeal also followed in that proceeding, both appeals involving the entire transaction could be considered by the board at once. Section 423 empowers the board to substitute its findings of fact for those of a referee without taking additional evidence; Calderwood v. Lumber and Supply Co. 91 Pa. Superior Ct. 189.

The judgment is affirmed.