Opinion by
 

 Baldrige, J.,
 

 This appeal by an insurance carrier raises the question of the right to recover compensation by the children of a member of the volunteer fire company of Latrobe Borough, who met with an accidental death alleged to have occurred in the course of his employment.
 

 The referee granted an award, which was sustained by the board and the learned court below.
 

 The essential facts are not in dispute. On the evening of August 3, 1935, Charles Fagan, chief of the fire department, learning that due to a flood a number of the inhabitants of the small town of Dorothy, situate about a mile southwest of Latrobe, were in .peril, sounded a fire alarm. Huber, the deceased, responded, and, when aiding in the rescue work, word was received by Chief Fagan that the Lampropolis family, residents of Latrobe, who had an island home about three miles east of Latrobe, were in a dangerous situation. The chief directed Huber and some of the firemen to go there on the fire truck, which was at Dorothy. When they arrived at their destination, they succeeded in getting a line to the island, by which Huber was able to cross the turbulent stream to reach this family. The rising waters were so high and swift that the only means available to regain the main land was by this line on which Huber and Andronica Lampropolis, a young woman, attempted to cross, hand over hand. In the middle of the stream their holds were broken, they fell into the water, and were drowned.
 

 
 *515
 
 The appellant contends that the deceased was not in the employ of the borough when performing this rescue work, as he was not actually engaged as a fireman within the meaning of section 104 of the Workmen’s Compensation Act of June 2, 1915, P. L. 736, as supplemented by the Act of May 14, 1925, P. L. 714 (77 PS §23), which reads as follows:
 

 “In addition to those persons included within the definition of the word ‘employe,’ as defined in section one hundred and four to which this is a supplement, there shall be included all members of volunteer fire companies of the various cities, boroughs, incorporated towns, and townships who shall be and are hereby declared to be ‘employes’ of such cities, boroughs, incorporated towns, townships for all purposes of said act, and shall be entitled to receive compensation in case of injuries received while actually engaged as firemen or while going to or returning from any fire which the fire companies of which they are members shall have attended.”
 

 The fact that the borough did not expressly employ Huber or have any voice in determining who should be members of the Latrobe Volunteer Fire Department is immaterial. The legislature saw fit to give to members of volunteer fire companies the protection afforded by our compensation laws. It is true, as argued, that Huber was not going to, or from, or fighting a fire when fatally injured, but he was engaged as a fireman when he responded to the alarm and reported for duty. He was then subject to “The Code of Laws” of the Latrobe Volunteer Fire Department, which provides, inter alia, that each member shall obey orders of his superior officer and not leave his post or station without his permission.
 

 Volunteer firemen are called upon to serve in cases of emergency, other than fire, where lives and property are in danger. It is well known when disastrous floods
 
 *516
 
 have been experienced in this Commonwealth that members of fire departments have rendered valuable and valiant service in rescuing persons in jeopardy. That is expected of firemen. We know of no case, when such an exigency has arisen, of failure to respond promptly. In so doing, they are generally regarded as performing work incidental to their duties. It is too narrow a construction of the Act of 1925, supra, to hold that it was within the contemplation of the legislature that compensation should not be awarded in the event of an accident to a fireman doing this character of humanitarian work in obedience to orders which he could not violate without penalty for insubordination. He is expected to execute commands without questioning the authority or the wisdom of his chief. As was said in
 
 City of Burlington et al. v. Pieters et al.
 
 (Wis.), 218 N. W. 816, 817: “It would be contrary to public policy to place upon firemen and policemen the duty to determine for themselves the powers of a city in every instance and thereby require them to disobey their chiefs. The emergencies of such departments require strict discipline and obedience on the part of employees to orders of superior officers. Policemen and firemen, when following the directions of their officers in the apparent line of duty, should have the protection of the law.” See, also,
 
 Grym et al. v. City of Virginia et al.
 
 (Mann.), 257 N. W. 661.
 

 In
 
 Sames v. Borough of Perkasie et al.,
 
 100 Pa. Superior Ct. 402, a member of the volunteer fire department was responding to a call which he was entitled to assume was issued as the result of a fire, but which proved to be for the purpose of engaging in a fire drill outside the borough. The truck upon which he was riding was ditched beyond the borough limits and he was fatally injured. The deceased, therefore, did not meet with an accidental death when going to, or from, or fighting a fire. We held, sustaining the compensa
 
 *517
 
 tion authorities, that the claimant was entitled to compensation as the deceased, within the contemplation of our statute, was actually engaged at the time of his death as a fireman.
 

 We do not régard seriously the contention of the appellant that because Huber stopped at the fire hall at Latrobe after he left the town of Dorothy, he ceased to be engaged in the course of his employment, and thereafter entered upon«a “new venture.” The evidence disclosed that he was required to report there where the fire truck was being driven. There was no termination or even an interruption in his work after he had reported for duty. He continued to be engaged as a fireman, performing duties directed by his chief until his death.
 

 After a careful consideration of all the assignments of error, we are convinced that the granting of an award was clearly warranted by the evidence in this case.
 

 Judgment affirmed.