## Badolato v. Berwick Borough, Appellant.

Argued March 8, 1939.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER and RHODES, JJ.

*Penrose Hertzler,* for appellant.

*John Arnold Crisman,* for appellee.

OPINION BY STADTFELD, J., April 21, 1939:

This is a workmen's compensation case which arose upon a claim petition filed by the claimant on April 15, 1937, in which he alleged that while "acting as volunteer fireman for Boro. of Berwick" on February 26, 1937, he suffered an accidental injury resulting in "laceration of right wrist." In its answer of April 28, 1937, the defendant denied that the claimant was injured while "in the course of his employment" as a volunteer fireman.

The referee made an award in favor of claimant. On appeal, the board affirmed the award. On appeal therefrom, the court overruled exceptions and entered judgment on the award.

The referee made, inter alia, the following findings of fact. "1. On February 26, 1937, claimant was a volunteer fire policeman in the Borough of Berwick, Columbia County, and on said date in the morning in response to an alarm sent by the Fire Marshal while testing fire alarm system the claimant while driving in his own automobile in the direction of the location of the supposed fire his automobile collided with another automobile and the claimant suffered an injury to his right hand. ...... 4. From the testimony we find that the claimant is totally disabled industrially as a result of the injury sustained in the accident in question," and made the following conclusions of law: "2. That the disability of the claimant is due to injury sustained in an accident that occurred in the course of the claimant's employment with the defendant. 3. That the claimant is entitled to compensation."

The board, in dismissing exceptions to these findings of fact and conclusions of law, made the following statements: "The claimant, Peter Patsy Badolato, on February 26, 1937, and for some time prior thereto, was a volunteer fireman and fire policeman. The claimant was a member of the Reliance Fire Company No. 1

of the Borough of Berwick, Pennsylvania. The claimant was selected by his Fire Company to serve as a fire policeman. At about 4:30 a. m. on February 26, 1937, a fire had occurred in the Borough of Berwick in a building on the corner opposite the Ideal Restaurant, at which time it was discovered that the fire alarm signal system was defective. After this fire had been extinguished, the fire marshal and fire chief, commencing about 6:30 a. m., began to test the various fire alarm signal boxes located in the Borough of Berwick. The claimant's wife being informed by the milkman, who was also a fireman, that there was a fire at the Ideal Restaurant, called her husband who was asleep at the time. The claimant hurriedly drank some coffee, and after difficulty in starting his car started by the shortest route to the Ideal Restaurant, for the purpose of assisting in fighting a fire which he thought was there burning. On his way, he stopped at the home of a fellow workman to send word that he would be late at his employment, but found no one at the residence of his fellow workman, and continued in the direction that he thought a fire existed. While attempting to start his car, he heard the sound made by the fire alarm system, but did not count the numbers given as he believed that he had reliable information concerning the location of the fire. While proceeding on his journey to the site of the supposed fire, an automobile driven by a stranger was driven into his car and the claimant suffered extensive lacerations of the palmer surface of the right wrist, which is the inside of the wrist, and which extended clear across the surface of the wrist; the tendons were badly severed, but not entirely cut through; nerves in the wrist were bruised and slightly lacerated but not completely severed. Some time after the expiration of the first thirty days following the accident, an operation was found necessary for the treatment of the claimant's injuries, and at the time

of the hearing before the referee, his hand and wrist were in a cast. ......"

. The testimony indicates that claimant did not count the number of blasts, but assumed that they signaled the fire he had been told about. Claimant could not have determined the number of blasts because the system was out of order. The rules of the Berwick Fire Department required the claimant to respond to this alarm, and sanctioned going to the scene of the fire directly in private cars. They further provided that, "The time of their (fire police) duty shall commence at or when an alarm of fire is sounded and shall not cease until their commanding officer shall so order." Fire Chief Cole testified that a fireman was under a duty to go where he has heard a fire exists.

After a careful examination of the testimony on behalf of claimant, we are of the opinion that it fully supports the findings of the referee and the board. There was no countervailing testimony on behalf of defendant.

The Act of May 14, 1925, P. L. 714, No. 387 §1 (77 PS §23) amending the Workmen's Compensation Act, upon which the claim in this case is based, provides as follows: "In addition to those persons included within the definition of the word 'employe,' as defined in section one hundred and four of the act to which this is a supplement, there shall be included all members of volunteer fire companies of the various cities, boroughs, incorporated towns, and townships who shall be and are hereby declared to be 'employes' of such cities, boroughs, incorporated towns, townships for all the purposes of said act, and shall be entitled to receive compensation in case of injuries received while actually engaged as firemen or while going to or returning from any fire which the fire companies of which they are members shall have attended."

Appellant contends that the claimant, at the time of his accidental injury, was not actually engaged as

a fireman or fire policeman and was neither going to nor returning from a fire which the fire company of which he was a member had attended. This is substantially the only question pressed by appellant. We cannot agree with its contention.

In the case of *Sames v. Borough of Perkasie et al.*, 100 Pa. Superior Ct. 402, 406, cited by the board and the court below, Mr. Justice LINN said, in construing the Act of May 14, 1925, supra. "...... The act must be liberally construed to accomplish the purpose of the legislation. That the alarm was false, in the sense that there was no fire, is immaterial; firemen have many obvious duties in and about the management, care, inspection and repair of their equipment and apparatus during the performance of which they are as much 'actually engaged as firemen' as if they were pouring water on a fire. *The question is, was the servant serving the master.* If such fire drills are a normal method of acquiring experience and efficiency in a fire company, and there would seem to be no doubt of that, the municipality profits by it. *Such service is clearly within the words* 'actually engaged as firemen' ......" (Italics supplied).

This case is the leading case construing the act cited above. It definitely rules that the fact that there was no fire and that this was a test alarm is immaterial. It definitely rules that the question is, was the servant serving the master regardless of whether the service was actually at a fire or going to or coming from a fire or doing any of the other many duties of a fireman. In the instant case, the findings of fact of the referee affirmed by the board and the court below and supported by ample, undisputed evidence definitely establish that the claimant was driving in response to information and an alarm to assist in putting out a fire, obviously one of his duties as a volunteer fireman and obviously serving his borough and fire department.

In the case of *Foster v. Borough of State College*, 110 Pa. Superior Ct. 452, 455, 168 A. 693, our brother, Judge BALDRIGE, in his opinion states: "It is well known that, in communities where there is no paid fire department, volunteer firemen frequently run to a fire. The running to the fire, we concede, was preliminary to Foster's regular work at the scene of the fire, but, undoubtedly, one of his duties was to get there quickly. When he left his home, therefore, he was then, admittedly, in the course of his employment, discharging a duty which necessarily required exertion."

One of the duties of a volunteer fireman is to get to the scene of the fire quickly. If an injury should occur enroute while running to the scene, it would be in the course of employment. According to the testimony of the Fire Chief, it was claimant's duty to go directly to the scene where he thought or had heard the fire existed.

That the Act of Assembly should be liberally construed, was indicated by this court in the case of *Barclay-Westmoreland Trust Co. v. Latrobe Borough*, 131 Pa. Superior Ct. 513, 515, 200 A. 271, in another opinion by Judge BALDRIGE, from which we quote: "Volunteer firemen are called upon to serve in cases of emergency, other than fire, where lives and property are in danger. It is well known when disastrous floods have been experienced in this Commonwealth that members of fire departments have rendered valuable and valiant service in rescuing persons in jeopardy. That is expected of firemen. We know of no case, when such an exigency has arisen, of failure to respond promptly. In so doing, they are generally regarded as performing work incidental to their duties. It is too narrow a construction of the Act of 1925, supra, to hold that it was within the contemplation of the legislature that compensation should not be awarded in the event of an accident to a fireman doing this character of humani-

tarian work in obedience to orders which he could not violate without penalty for insubordination." As in the latter case, the sole question here is, was claimant, at the time of the accident, "actually engaged as a fireman."

Any other than a liberal construction of the Act of Assembly would be unfair to claimant and injurious to the communities in which volunteer firemen are maintained. It is a practical necessity, where firemen are scattered throughout the community that they go directly to the scene of a fire; that they go directly to the point where, according to reliable information, a fire exists; that they respond to an alarm in their private cars if they can do so. If this method of response were not possible, the efficiency of volunteer fire departments would be seriously impaired. To deny compensation to a fireman injured while in his own automobile driving to the scene of a reported fire, particularly after an alarm has sounded, would result in a reluctance of volunteer firemen to act as such, to the serious detriment of their communities; but if they did so act, it would result in placing the financial burden unjustly upon them and their families. That this is not the intention of the act is amply shown by the cases cited.

After carefully considering the able brief by appellant, we are nevertheless of the opinion that the law was properly applied to the facts as found. The assignments of error are overruled and judgment affirmed.