Opinion by
 

 Keller, P. J.,
 

 This workmen’s compensation death claim naturally excites one’s sympathy, but it is subject to the condition uniformly imposed in all such claims, viz, that compensation is payable only if the death of the employee accidentally occurred in the
 
 course of his employment.
 

 By virtue of the provisions of the Act of June 4, 1937, P. L. 1552, claimant’s husband, Albert E. Lees, must be regarded as a limited or provisional employee ,of the Borough of Ferndale on October 12, 1938, the day of the fatal accident. He was a member of the Ferndale Volunteer Fire Company, and by virtue thereof became entitled to compensation if he was accidentally injured while] as such employee, he was actually engaged as a
 
 fireman,
 
 or while going to or returning from any fire, which the fire company of which he was a member attended, or while performing
 
 any other duties of such company.
 
 It is clear that the employment must be based on his membership in a volunteer fire company
 
 and his performance of duties as such member,
 
 and be confined to such duties as he might be called upon by the proper authority to perform as a member of that company. He was not a general employee of the borough,
 
 (Shindledecker et al. v. Borough of New Bethlehem,
 
 145 Pa. Superior Ct. 77, 20 A. 2d 867) and the injuries for which the borough or its insurance carrier was required to compensate him, or his dependents in case of his death, must have been such as occurred in the
 
 course- of the performance of his duties while acting as a fireman,
 
 and in consequence
 
 *72
 
 of his membership in the volunteer fire company.
 

 Claimant’s husband lived with his wife and four minor children in his home, No. 543 Summit Avenue, Johns-town, Pa. It was one and a half stories high in front and two at the rear. So far as the record shows he had spent the evening of October 12, 1938 at home with his family. Certainly it was not shown that he was engaged that night on any business or duties for the fire company. About 10:45 o’clock, when the children were upstairs asleep in bed, he went out of the house to the yard in the rear for the purpose of tying up his dog. While he was there, his wife, this claimant, who was on the first or street floor, screamed “Albert, the house is on fire, the house is on fire.” He rushed at once into the house, entering through a basement kitchen at the rear. He ran upstairs to the first or street floor, and then, while ascending the stairway leading to the second floor he found his oldest daughter and a younger child whom she had pulled out of the flames. This child’s clothing was on fire. The father tore the clothing off and put out the flames, and then rushed up the stairs and entered the part of the house where the youngest child was, or had been, sleeping; and he was not seen again until the members of the fire company, who had come in response to the calls and screams of the wife and the two older children, found him burned to death about an hour later. The child whom he attempted to rescue was also killed in the fire.
 

 The rules of the Ferndale Volunteer Fire Company provide that
 
 at the alarm of
 
 fire-, the members shall report for duty at the engine house, unless more expedient to go directly to the fire,
 
 hut shall in all cases present themselves to the fire chief,
 
 or in his absence, to the next officer in charge,
 
 for assignment to duty.
 

 The narrow question here involved is, was the act of claimant’s husband in rushing into the house, following the outcry of his wife, in an endeavor to rescue his children, done in his capacity as a fireman, and by reason
 
 *73
 
 of his membership in the volunteer fire company, or was it the spontaneous impulse of a father seeking to save his children? Sad as the outcome may be, we can see nothing in the circumstances above related that distinguishes his conduct from what he would have done if he had not been a member of the fire company. There is nothing in the record to show that his attempted rescue of his little child was undertaken in his capacity as a member of the fire company and employee of the borough rather than in his individual relation as a husband and father.
 

 None of the cases cited and relied on by the board, and by the court below in sustaining the award of compensation to the widow and children, goes as far as this decision does, or justifies an award in the circumstances present in this case.
 

 In
 
 Sonnett v. Stowe Twp.,
 
 100 Pa. Superior Ct. 397, the claimant’s husband, a member of a volunteer fire company in defendant township, was
 
 instructed
 
 by the chief of the fire company to go to a fire in Heidelberg Township, of such magnitude as to result in “a general alarm or call for help.” On his way there the truck overturned and he was killed. It is customary for fire companies to assist in putting out fires in other districts when asked for help, but the award in the Sonnett case would not have been made or sustained, except for the fact that he was instructed by his chief, acting for his employer, to go. A voluntary act of assistance on his part, resulting in his injury, would not have been compensable.
 

 So in
 
 Sames v. Boro. of Perkasie,
 
 100 Pa. Superior Ct. 402, where a like custom prevailed — as in fact it does generally — the claimant’s husband was a member of a volunteer fire company in the Borough of Perkasie. Pursuant to an arrangement between the chief of the Quakertown Fire department and the chief of the Perkasie fire department, for the purpose of practicing a fire drill in Quakertown, the former sent the following
 
 *74
 
 message to the neighboring fire companies: “Send your pumper and men to Quakertown immediately.” On receiving the message, the Perkasie chief gave an alarm for an out-of-town call and in response to this, claimant’s husband reported at the fire house and mounted the truck. The men were not informed by the chief that they were going to a fire drill, but assumed that they were going to a fire. On the way to Quakertown the truck was ditched and Sames was injured so that he died. A claim for compensation was ultimately filed against Perkasie and Quakertown. The referee dismissed the claim as to Perkasie and made an award against Quakertown on the ground that Sames had been ‘loaned’ to Quakertown. Appeals were taken to the board which held that Sames was not a loaned employee of Quakertown, and made an award against Perkasie, which was affirmed and judgment entered accordingly. This court sustained the board and court below, and speaking through Judge Linn, said, inter alia: “It is not disputed that Sames was a member of a volunteer company who was fatally injured
 
 while obeying the instructions of his chief
 
 to proceed with the company’s truck to Quakertown. He came to the fire house in response to the alarm for an out-of-town call and took his place on the truck; for all he knew, there was a fire. From the time he so took his place on the truck, if not sooner, he was ‘actually engaged as’ fireman, within the meaning of the
 
 statute......The question is, was the servant serving the master.
 
 If such fire drills are a normal method of acquiring experience and efficiency in a fire company, and there would seem to be no doubt of that, the municipality profits by it. Such service is clearly within the words ‘actually engaged as firemen’. At bottom, the important question here is one of law: whether the evidence sustains the finding made by the board; we all agree that it supports the finding that Sames was actually engaged as a fireman, who was injured in the course of his employ
 
 *75
 
 ment.” (Italics supplied). Here again, as in the Son-nett case, it is the
 
 employment
 
 that governs; his acting under the orders of his superior officer. Actually there was no Are, but Sames was serving his employer, the borough, in obeying the orders of the chief of the fire department. Had he gone to Quakertown to attend the fire drill, without any orders from his chief, and been injured, there could have been no award.
 

 In
 
 Barclay-Westmoreland Trust Co. v. Latrobe Borough,
 
 131 Pa. Superior Ct. 513, 200 A. 271, the claimants’ father was a member of the volunteer fire company of Latrobe Borough. The chief of the fire department learned that a number of people living in Dorothy, a small town about a mile distant from Latrobe, were in peril because of a flood and sounded a fire alarm. Claimants’ father, Huber, responded and while aiding in the flood rescue work, which is not uncommon for fire companies in flood time, he, along with some other firemen, was directed by the chief to take a fire truck and go to an island about three miles east of Latrobe where a family named Lampropolis was in a dangerous situation. A line was stretched to the island, by means of which Huber was able to cross the flood and reach this family; but while attempting to regain the mainland, with one of the daughters, by the use of this line, the current was so strong and swift that both lost their holds on the line and were drowned. In sustaining the judgment in the court below on an award against the borough, Judge Baldkige, speaking for this court, said: “Volunteer firemen are called upon to serve in cases of emergency, other than fire, where lives and property are in danger. It is well known when disastrous floods have been experienced in this Commonwealth that members of fire departments have rendered valuable and valiant service in rescuing persons in jeopardy. That is expected of firemen. We know of no case, when such an exigency has arisen, of failure to respond promptly. In so doing, they are generally regarded as performing
 
 *76
 
 work incidental to their duties. It is too narrow a construction of the Act of 1925, supra, [May 14,1925, P. L. 714] to hold that it was within the contemplation of the legislature that compensation should not be awarded in the event of an accident to a fireman doing this character of humanitarian work in
 
 obedience to orders
 
 which he could not violate without penalty for insubordination. He is expected to execute commands without questioning the authority or the wisdom of his chief.” Had Huber, stirred by humanitarian impulses, attempted the same rescue, or the rescue of his own child in like circumstances, without orders from his chief, there could have been no award of compensation.
 

 In
 
 Badolato v. Berwick Borough,
 
 135 Pa. Superior Ct. 416, 5 A. 2d 635, a very close case, in which, although the report fails to show it, we were not all of one mind, the claimant was injured while driving his own automobile to the scene of a reported fire, after an alarm had been sounded, even though it developed that the fire had been extinguished before claimant set out for it and that the alarm was merely a test alarm. This court held that the determining question was whether the volunteer fireman was in the course of his employment — that is,
 
 “was the servant serving the master
 
 regardless of whether the service was actually at a fire, or going to or coming from a fire or doing any of the other many duties of a fireman” (p. 421).
 

 On the other hand, in
 
 Versellesi v. Elisabeth Twp.,
 
 136 Pa. Superior Ct. 362, 7 A. 2d 381, we reversed a judgment in the court below entered on an award in favor of a claimant under the Act of May 14, 1925, P. L. 714, who was
 
 chief
 
 of a volunteer fire company and who was injured while working on the roof of an addition to the fire house, which was being built for the purpose of providing larger and more convenient accommodations for social functions to be held in the fire house.
 

 And in
 
 Shindledecker et al. v. Borough of New
 
 Beth
 
 *77
 

 lehem,
 
 145 Pa. Superior Ct. 77, 20 A. 2d 867, we reversed judgments entered by the court below on awards of the board — reversing the referee — in favor of three volunteer firemen of New Bethlehem Borough, and the widow of a fourth, who were injured while returning by automobile from a meeting with a volunteer fire company at Emlenton, which had been called to promote a convention sponsored by an organization known as the Mutual Firemen’s Association, of which the volunteer fire company of New Bethlehem was a member and the purpose of which was to further the interests and promote the efficiency of its constituent member companies. Judge Hirt, speaking for the court, said: “The referee denied compensation but the board reversed, on its substituted finding that these members were Then actually engaged as firemen’. The lower court took the view that because they were engaged solely in company affairs at its direction at the time of the accident, these members in effect were statutory employees of the borough entitled to compensation under the act and accordingly entered judgments on the awards. We are unable to agree with the board that the application of the act can be so extended nor with the court as to the test to be applied. Many kinds of gratuitous services are accepted by a borough from its citizens, among them the services of its volunteer firemen. Parades, exhibitions, conventions and the like, all, directly or indirectly, contribute to the efficiency of a volunteer fire company and to the benefit of the borough. But they who thus give of their service do not, thereby become employees of the borough. Liability for compensation without negligence on the part of the borough can arise only by virtue of statutory enactment. There is no public policy of the Commonwealth as to compensation except as expressed in the compensation statutes.
 
 DeFelice v. J. & L. Steel Corp., 137
 
 Pa. Superior Ct. 191, 8 A. 2d 465. Courts can sustain, only such compensation awards as are within the scope of the liability so imposed by the legislature.
 
 *78
 

 Versellesi v. Elizabeth Twp. et al.,
 
 136 Pa. Superior Ct. 362, 7 A. 2d 381. By the amending Act of 1925 members of volunteer fire companies of boroughs were included within the definition of ‘employees’ under the Compensation Law, not generally, but only ‘while actually engaged as firemen or while going to or returning from any fire which the fire companies of which they are members shall have attended.’ Injury, to be compensable, must have occurred within the restricted circumstances which alone give rise to the right under the act. Casual injuries incident to other activities of the volunteer fire company were not contemplated by the act, except to be excluded by necessary implication as risks which must continue to be assumed by the members ......The act has been liberally construed, as it must be, to accomplish the purpose of the legislation.
 
 Sonnett v. Stowe Twp.,
 
 100 Pa. Superior Ct. 397;
 
 Sames v. Borough of Perkasie,
 
 100 Pa. Superior Ct. 402;
 
 Barclay-Westmd. Tr. Co., v. Latrobe Boro.,
 
 131 Pa. Superior Ct. 513, 200 A. 271. But even a most liberal construction cannot bring claimants within the benefits of the act. Its clear language necessarily excludes liability for compensation, as applied to these appeals, except to members
 
 ‘while actually engaged as firemen’.
 
 One promoting a convention is not so acting and though these members undoubtedly were furthering the interests of their company and of the boroughs, there is no foundation in law for the awards in these cases.” (Italics supplied).
 

 The case most nearly like this one in its facts is
 
 Graham v. Philipsburg Borough,
 
 15 Pa. W.C.B. Dec. 341, where a member of a volunteer fire company received some burns while putting out a small fire which began on his garage roof while he was working on it. The board, in reversing a referee’s award in his favor, said that he was not in the employ of the borough during the few minutes needed to put out the fire, but that he was ihen working on his own account. While the injuries
 
 *79
 
 sustained in that fire were minor in character, the principle would have been the same if he had lost his life in putting out the fire.
 

 If the fire had broken out in Lees’ home after he was in bed and asleep, and he had been killed in an attempt to fight his way out of the burning house, could it be seriously contended that in so doing he was acting as the servant or employee of the borough rather than as an individual bent on escaping the fire?
 

 The burden of establishing the necessary facts to support the conclusion that the deceased was in the course of his
 
 employment as a fireman
 
 at the time he was fatally injured, was on the claimant:
 
 McDermott v. Sun Indemnity Co.,
 
 131 Pa. Superior Ct. 60, 71, 198 A. 499. Where the facts are not in dispute, the question whether the employee was injured in the
 
 course of his employment,
 
 is one of law:
 
 Paulin v. Williams & Co.,
 
 122 Pa. Superior Ct. 462, 467, 186 A. 415, affirmed 327 Pa. 579, 195 A. 40.
 

 In our opinion there is nothing in the evidence to support the conclusion that when Lees rushed into the house following the outcry of his wife he was acting in the capacity of an
 
 employee
 
 of the borough.
 

 The judgment is reversed and judgment is now entered for the defendants.